394 So.2d 864 (1980)
GULF NATIONAL BANK
v.
Rosemary Evans WALLACE.
No. 52217.
Supreme Court of Mississippi.
December 10, 1980.
Rehearing Denied March 18, 1981.
John C. Ellis, W. Joel Blass, Mize, Thompson & Blass, Gulfport, for appellant.
Joe Sam Owen, Gulfport, for appellee.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BROOM, Justice for the Court:
Fraud related to execution of documents securing a bank loan is the gist of the action of Rosemary Evans Wallace[1] (hereinafter Mrs. Wallace) against Gulf National Bank (GNB). Trial in the Circuit Court of Harrison County, First Judicial District, resulted in a verdict of $250,000 actual and $350,000 punitive damages in favor of Mrs. Wallace. Remittitur of $250,000 was ordered below leaving Mrs. Wallace with a judgment for $250,000 actual plus $100,000 punitive damages. GNB argues on its direct appeal that (1) Mrs. Wallace failed to meet her burden of proof to establish fraud, and (2) the lower court erred in instructing the jury. On her cross appeal, Mrs. Wallace contends that punitive damages should have been remitted by only $100,000. We reverse.
Testimony presented was that Mr. Evans and his partner applied for a large loan from GNB. Security offered by the borrowers was inadequate unless Mrs. Wallace's land was included in the deeds of trust securing the loan. The deeds of trust, which included her property, were prepared at GNB by a Mrs. Holley, secretary of Mr. Sneed, GNB's president. Mr. Evans brought the deeds of trust home and called Mrs. Holley, their nearby neighbor, to come by and notarize them. She came to the Evans residence where, after Mrs. Wallace signed them, Mrs. Holley took her acknowledgement. These events transpired February 22, 1974, and the deeds of trust were delivered in due course to GNB.
Subsequently, on April 3, 1974, Mrs. Wallace executed an assignment of her $23,626.28 certificate of deposit to GNB. Then on July 29, 1974, again in her living room, Mrs. Wallace signed a loan extension document under much the same circumstances as existed when she signed on February *865 22nd. After Mr. Evans and his partner defaulted in payment of the loan, GNB foreclosed on the property resulting in sale of the security collateral including Mrs. Wallace's land in Harrison County. Other facts will be stated as appropriate to disposition of the appeal.
Decisive is the following query: Was the testimony presented at the trial sufficient to establish fraud on the part of GNB? Our decision must adhere to the rule requiring establishment of fraud by clear and convincing proof. Aponaug Mfg. Co. v. Collins, 207 Miss. 460, 42 So.2d 431 (1949); Martin v. Gill, 182 Miss. 810, 814-815, 181 So. 849, 850 (1938); Christian v. Green, 45 So. 425, 425-426 (Miss. 1908).
In her brief, Mrs. Wallace contends:
In the living room of the appellee's domicile, Mrs. Elaine Holley casually advised the appellee that the documents pertained to the Pearl River County property (Red Gate Farm) and the appellee's signature was needed since she was the spouse of one of the debtors, Allen Evans. Mrs. Holley verbally and unconditionally represented to the appellee that the signing of the documents was a "routine business matter." Feeling no compulsion to challenge the propriety of Mrs. Holley's request and representation, and having the utmost trust and confidence in the appellant bank, the appellee signed the last page of the two documents as presented to her. The appellee was not advised by Mrs. Holley that the documents in question were in fact deeds of trust nor was the appellee advised by Mrs. Holley that the documents created a lien on certain real property owned by the appellee in Harrison County, Mississippi.
Regarding the assignment of her savings account to GNB, Mrs. Wallace states in her brief:
The action of the appellee in executing the document was predicated upon a prior conversation between the appellee and Chunn Sneed of the appellant bank wherein Mr. Sneed induced the appellee to sign the document. The appellee was advised by Mr. Sneed that he could secure a profitable rate of interest on her Certificate of Deposit if she placed the monies under his control or the control of the bank.
Concerning the July 1974 deed of trust which Mrs. Wallace executed, she states in her brief that she
was once again confronted in the living room of her house on 2nd Street. In almost an identical setting, Elaine Holley presented to the appellee another document and advised the appellee that it was a document in which her signature was needed. Mrs. Holley advised the appellee once again that it was "a routine business matter."
Neither side presented testimony of Mrs. Holley, GNB's secretary, thereby leaving Mrs. Wallace's case largely dependent upon her own testimony. GNB's president Sneed testified, and there is no denial, that Mrs. Holley prepared the documents which Mrs. Wallace signed in her living room. Mr. Evans testified that he had to pledge Mrs. Wallace's property as security for the GNB loans. As to the extent of Mrs. Wallace's damages, she presented Dr. Seastrunk who testified that she had suffered severe emotional damage and would, in terms of medical probability, later require in-patient psychiatric care. She also presented lay testimony concerning her depression and hysteria.
In response to GNB's contention that she failed to establish fraud by clear and convincing proof, Mrs. Wallace's position is set forth in the following language excerpted from her brief:
In construing the effect of the representations made by Elaine Holley and the effect given to those representations by the appellee, one can easily discern from a review of the entire record in this cause that the appellee was led to believe: (1) That her signature was needed since she was the spouse of Allen Evans; (2) That it was a routine business matter, implying that since she was the spouse of Allen Evans her signature was needed; (3) *866 That it pertained to the property in Pearl River County (Red Gate Farm).
Our analysis of the testimony reveals that Mrs. Wallace was less than clear in her recollection of who told her that signing the papers "was a routine business matter." During cross examination of Mrs. Wallace, appellant's attorney recounted her testimony when she was deposed:
Question: My question, if you would like to expand on it, and I'll be glad to let you, but I believe my question was who told you this was just a routine matter, a routine business matter?
Answer: Allen Evans told me that it was a routine matter or the wording was not specific, I was just led to believe it was a routine matter. In other words, there was no explanation made to me by either party as to all they said.
Immediately thereafter the following colloquy occurred in the courtroom between Mrs. Wallace and appellant's attorney:
A. And I went on further to say that it was done in such a nonchalant manner that it would be impossible to remember exactly who said what. There was no importance placed on the signing of these papers.
Q. All right. So, now, you really don't remember who said what, do you, Mrs. Wallace? Be fair with me. You don't know, do you?
A. (No response.)
Q. On your oath?
A. On my oath?
Q. You don't know, do you?
A. No. Elaine Holley was there.
Careful examination of the record shows that in her testimony at trial, Mrs. Wallace conceded that in her earlier deposition testimony she noted that it was Mr. Evans who stated that it was a routine matter. As to her version that she was led to believe her signature was needed because the documents "pertained to the property in Pearl River County"  such a conclusion is unsupported by the record. Actually the record of Mrs. Wallace's testimony refutes that GNB's secretary, Mrs. Holley, made any fraudulent representation. The brief of Mrs. Wallace states that GNB's testimony as to the representations made by Chunn Sneed that he would secure for her a profitable rate of interest if she would sign the Assignment of Savings Account remains uncontradicted. This assertion is without merit because she testified at trial that there were no communications from Mr. Sneed prior to her signing the two deeds of trust and the assignment.
Testimony contained in the record presents no indication that Mrs. Wallace was in the category of an illiterate person or one of low mentality. To the contrary, she is an experienced school teacher, a college graduate, and a licensed real estate saleswoman. There is no question that she could read and understand the English language. No testimony was introduced to the effect that anyone suggested that she not read or examine the loan documents. Nor did anyone keep her from scrutinizing them. At the time she executed the deeds of trust, she did not ask any questions and did not call the bank about them which in bold print (at the top of the page) showed what they were. After the deeds of trust were executed, with GNB's consent, Mrs. Wallace sold one of the parcels of land. Then it was that the proceeds of the sale were placed in a savings account (certificate of deposit) in her name and assigned to GNB as collateral substituted for the land.
After stating that the case might be weak, the lower court overruled GNB's motions for a directed verdict and peremptory instruction. The proof introduced by Mrs. Wallace, an adult person of no disability, considered most favorably to her along with all reasonable inferences drawn therefrom in her favor, failed to make out a case sufficient to go to the jury on the theory of fraud. Her testimony leaves the inescapable conclusion that she was not sure who told her that her signing the documents in question was a routine matter.
We are unable to conclude that there was any clear and convincing evidence before the jury from which it might reasonably find that Mrs. Wallace signed either of the *867 loan documents as a result of any fraud, misrepresentation or deceit on the part of GNB. Failure of GNB to thereafter give her details, when requested by her, about the loans made to her then husband and his partner cannot be a proper basis for finding that her signature was fraudulently obtained.
It follows that the decision appealed from must be reversed, and judgment for GNB entered here. In view of our holding, we do not reach other assignments of error.
REVERSED AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P.JJ., and LEE, BOWLING and COFER, JJ., concur.
SUGG and WALKER, JJ., take no part.
NOTES
[1] It was not until March 1975 that Mrs. Wallace obtained a divorce from Allen Evans. Several months prior to the Red Gate Farm venture negotiations with Gulf National Bank, the Evanses were living apart. At the time of the loan, however, in February 1974, they were reconciled and living together.