608 So.2d 324 (1992)
Robert G. NICHOLS, Trustee for Enertec Southern, Inc.
v.
TRI-STATE BRICK AND TILE COMPANY, INCORPORATED, and Pan-Brick, Incorporated.
No. 07-CA-59648.
Supreme Court of Mississippi.
October 29, 1992.
As Corrected November 12, 1992.
*325 Stephen L. Beach, III, Fred A. Ross, Jr., Beach Luckett & Ross, Jackson, for appellant.
John C. Henegan, A. Camille Henick, Butler Snow O'Mara Stevens & Cannada, Rhesa H. Barksdale, David W. Clark, Wise Carter Child & Caraway, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
We are once again confronted with a grant of summary judgment, wherein it is alleged that there are material facts in *326 dispute. Finding that, as to one defendant, the allegation is accurate, and further that defendants' alternate ground for affirmance based on a statute of limitations bar is not well taken, we reverse as to the defendant Tri-State Brick and Tile Company, Incorporated.

I.
In November of 1985, Enertec Southern, Incorporated (Enertec) sued Tri-State Brick and Tile Company (Tri-State) for breach of contract, fraud, and interference with contract. Tri-State moved for summary judgment and, as to the contract claim, the motion was granted. Enertec then filed an Amended Complaint in March of 1986 and Tri-State again sought summary disposition, this time requesting partial summary judgment.
Enertec then instituted bankruptcy proceedings in federal court against both Tri-State and Pan-Brick, Incorporated, (Pan-Brick) alleging antitrust and unfair competition violations. Enertec later amended its complaint and added malicious interference, conspiracy, and fraud; the antitrust and conspiracy claims against Tri-State were deleted with a second amendment. In final form, the complaint alleged malicious interference and fraud claims against Tri-State.
At the completion of discovery, summary judgment was granted in favor of Pan-Brick on the antitrust claims; the district court declined to rule on the merits of the remaining claims, holding that they would be best decided by this Court.
In May of 1988, Enertec filed its second amended complaint in the Hinds County Circuit Court. It joined Pan-Brick as a defendant, substituted contractual interference claims against Tri-State and Pan-Brick, and alleged fraud against Tri-State.
Both Tri-State and Pan-Brick moved for summary judgment which the court granted, without opinion, in September of 1988.

II.[1]
In the Spring of 1984, Enertec became interested in obtaining licenses to manufacture and sell pan-brick panels from the patent holder, Pan-Brick.[2] Enertec was also in need of a regular supplier of one of the components of the panels, brick slices, and a distributor for the finished panels. It approached Tri-State as a slices supplier. Although Tri-State did not manufacture slices, it found sources for them. Through this contact, Tri-State became interested in being the distributor of the finished panels. In addition, Enertec was in need of financing for its new enterprise and sought assistance from Tri-State. As a consequence of its relationship with Enertec, Tri-State became involved in the negotiations between Enertec and Pan-Brick.
During April and May of 1984 a number of agreements were negotiated between Tri-State, Enertec, and Pan-Brick. Pan-Brick and Enertec entered into a license agreement; Enertec and Tri-State, a distributorship agreement and a loan guarantee agreement between Enertec, Tri-State and Rankin County Bank, wherein Tri-State guaranteed one-half of a $300,000 loan to Enertec.
The licensing agreement, dated April 30, 1984, made Enertec the sole license holder in the United States. The agreement authorized Enertec to manufacture and sell panels in Mississippi, Alabama, Louisiana, Arkansas, and Shelby County, Tennessee.[3] The distributorship agreement was executed on or about May 21, 1984. Tri-State, pursuant to this contract, was not authorized to begin to purchase panels from Enertec until March of 1985.
Tri-State also entered into an agreement with Pan-Brick. This contract, which is the primary source of Enertec's contentions *327 in this litigation, is dated May 21, 1984. Tri-State claims that it entered into this agreement with the full knowledge of Enertec as additional security for its guarantee of the loan from Rankin County Bank to Enertec. Enertec denies any knowledge of the agreement prior to November 1985. This agreement essentially provided that should the Enertec license be terminated for any reason by either Pan-Brick or Enertec, Tri-State would have the option to cure any default and resume operations under the license without having to pay an additional license fee. At the time of trial, Tri-State had not exercised the option.
By September of 1984, Enertec was experiencing financial difficulty. At that time, it sought to delay royalty payments and requested further financial assistance from Tri-State, which refused. Enertec then sought funding from private investors, who conditioned funding upon Enertec acquiring licenses in other states. The parties paint slightly different scenarios as to what took place during the early stages of production and the months of subsequent production and financial difficulty, resulting in ultimate failure. Enertec emphasizes what it perceives as the failings of Tri-State with regard to supplying brick slices and marketing effort contending that these failings were a part of a deliberate plan to take over Enertec. Tri-State argues that Enertec's failing is attributable to its own poor management and decision-making and that Tri-State did nothing to interfere with Enertec's performance of its obligations.
Around mid-October of 1985, Enertec ceased operations. This litigation ensued.

III.
Enertec contends that the court erred in granting the defendants' motion for summary judgment. Specifically, it argues that its claims are not barred by the one-year statute of limitations applicable to intentional torts and its contentions of malicious interference with business relations and fraud against Tri-State and Pan-Brick withstand summary judgment on the merits.
Because this dispute arises in the context of a grant of a summary judgment motion, our analysis begins with the guidelines to which a trial court must adhere when presented with such a motion. Mississippi Rule of Civil Procedure 56 provides for summary disposition in cases where there is no genuine factual dispute between the parties. Allen v. Mayer, 587 So.2d 255 (Miss. 1991). The lead case outlining the procedure to be followed by a trial court before granting or denying a summary judgment motion is Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). There, we held that a trial court, when presented with a motion to summarily dispose of a case, must carefully review all evidentiary matters. Id. at 362. If, after review, there is no genuine issue as to any material fact, then the moving party is entitled to judgment as a matter of law. Allen, 587 So.2d at 259 quoting Brown, 444 So.2d 358, 362. Summary judgment should be granted only where the pleadings, discovery materials, and affidavits show that there is no genuine issue of material fact. Galloway v. Travelers Ins. Co., 515 So.2d 678 (Miss. 1987).
These principles guide our examination of the trial court's actions. The record on appeal is quite voluminous, consisting of more than 500 pages in briefs and supplements, 355 exhibits, and 19 depositions. It is fraught with factual disputes and issues of credibility. We see no other recourse than to reverse the disposition rendered below.

IV.
Enertec argues in support of its claim of malicious interference that Tri-State intended to put Enertec out of business from the very beginning and acquire Enertec's license. It contends that the agreement between Tri-State and Pan-Brick was detrimental to its interests and made it more advantageous to Tri-State that Enertec be put out of business. Tri-State argues that no issues of materiality were in dispute. Enertec's evidence, Tri-State contends, is conclusory, self-serving, fraught with hearsay, and not based on personal knowledge.
*328 Enertec contends that Tri-State's bad faith and malicious purpose is evidenced clearly by the, allegedly secret, May 21 agreement executed between Pan-Brick and Tri-State which placed Tri-State in a position of competing with Enertec for its (Enertec's) license from Pan-Brick. By entering into its own agreement with Pan-Brick, it is asserted, Tri-State breached its duty to and is in direct competition and interference with Enertec.
Tri-State responds that Enertec's claim for malicious interference with contract is baseless because it did not cause Pan-Brick to breach its license with Enertec. It argues that Enertec can only claim breach of contract and that breach cannot be the basis for interference. Alternatively, Tri-State argues that its actions were privileged and Enertec has not established that it would have succeeded under the license but for the alleged interference. It also argues that Enertec knew of the agreement and there is no evidence that Tri-State took any action against Enertec as a result.
We have recognized malicious interference with the "right to pursue a lawful business, calling, trade or occupation" as a tort. Protective Service Ins. Co. v. Carter, 445 So.2d 215, 216 (Miss. 1983). An action for interference with the contract ordinarily lies when "a party maliciously interferes with a valid and enforceable contract ... causing one party not to perform and resulting in injury to the other contracting party." Mid-Continent Telephone Corp. v. Home Telephone Co. 319 F. Supp. 1176, 1199 (N.D.Miss. 1970). In this situation, the tort only arises if there is interference with the contract between plaintiff and some third party.
We also recognize a cause of action for interfering with a prospective business advantage. Business Equipment Center, Ltd. v. DeJur-Amsco, 465 F. Supp. 775 (1978)[4]. Protective Service Ins. Co. v. Carter, 445 So.2d 215, 216 (Miss. 1983). The elements of this tort are
(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.
Galloway, 515 So.2d at 682, 683 quoting Carter, 445 So.2d at 217; Irby v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118, 119 (1960).
Enertec claims that from the very beginning, Tri-State intended to put it out of business and take over its operations. It relies inter alia upon the affidavit of Don Agent, the former Tri-State employee.[5] Agent stated that he had frequent contacts with Tri-State personnel. He claimed that the Tri-State hierarchy made an affirmative determination and decision *329 to take over Enertec, at some point. Specifically, he stated,
The basic plan of Tri-State Brick & Tile Company, Inc. was to first allow Enertec Southern, Inc. enough time to get the production of "Pan-Brick" set up and running with all of the manufacturing startup "kinks" ironed out and when that occasion occurred, Tri-State Brick & Tile Company, Inc. had formulated a plan within which to put Enertec Southern, Inc. out of business against its will by withdrawing credit assistance with the Rankin County Bank and Tri-State Brick & Tile Company, Inc. and the deliberate withholding of the delivery of brick slices to Enertec Southern, Inc., thereby making it impossible for them to manufacture Pan-Brick.
[T]heir intent and purpose from the onset up until the later part of 1985 was to fraudulently acquire its assets with minimum exposure of liability.
One of the many things that I have personally witnessed and participated in was the telephoning of the brick slice suppliers in other states and instructing them to with-hold timely delivery of brick slices to Enertec Southern, Inc., thereby depriving Enertec Southern, Inc. of the ability to manufacture Pan-Brick panels, for which we were obligated to purchase under the Distributorship Agreement.
Agent's statements alone satisfy each requirement of the cause of action of tortious interference with business relations.
Tri-State contends that, even if the claim for interference is allowed, summary judgment is proper because Enertec must prove that it would have succeeded under the license, but for the interference, citing Bailey v. Richards, 236 Miss. 523, 533-537, 111 So.2d 402, 406-07 (1959); Johnson v. Warnaco, Inc. 426 F. Supp. 44, (S.D.Miss. 1976); and Martin v. Texaco, 304 F. Supp. 498, 502 (S.D.Miss. 1969). It argues that Enertec was doomed by September of 1984 because its capital was spent, and also due to delays and cost overruns[6].
As an initial matter, Tri-State correctly states applicable legal principles. It is wrong, however, in its assertion that we can say with the certainty required for summary judgment that Enertec could not prove that it would have succeeded, absent Tri-State's interference. It should suffice to say that the question of the causation and quantum of damages in relation to tortious conduct is a jury issue seldom amenable to summary disposition. It is not amenable here.

V.
Enertec lists eight representations of fraud it claims Tri-State made:
(A) Beginning in approximately March of 1984 through March of 1985, Defendant [Tri-State] by and through its personnel and agents made representations to the Plaintiff that [Tri-State] desired to be a business partner of the plaintiff.
(B) [Tri-State], by and through its personnel and agents, would supply brick slices on a reasonable, timely basis to the plaintiff.
(C) [Tri-State], by and through its personnel and agents, would purchase the entire production capacity of the plaintiff.
(D) [Tri-State] would deal, at all times, with the plaintiff in good faith.
(E) [Tri-State] was not desirous of taking over or otherwise putting the plaintiff out of business.
(F) [Tri-State] would not use its dominant credit position as a tool to injure the plaintiff.
(G) On or about February 1985, [Tri-State] induced the current stockholders of the plaintiff to invest additional capital in the plaintiff with the promise that [Tri-State] likewise would make a capital investment.
(H) [Tri-State] would make a reasonable effort to market the products of the plaintiff.
Tri-State counters by stating that Enertec has not made an adequate showing for each element of this claim. Furthermore, *330 in contravention of Miss.R.Civ.P. 9(b), which requires that all averments of fraud and the surrounding circumstances be asserted with particularity, Tri-State claims that Enertec makes only a summary recitation of elements.
As with the tortious interference claim, Enertec prevails on this issue. The Court's most recent pronouncement concerning claims of fraud is found in Whittington v. Whittington, 535 So.2d 573 (Miss. 1988). There we held:
The elements of fraud are well established: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury. See, e.g. Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984); Hamilton v. McGill, 352 So.2d 825, 841 (Miss. 1977); Crawford v. Smith Brothers Lumber Co., 274 So.2d 675, 678 (Miss. 1973). It is likewise well established that fraud is never presumed but must be proven by clear and convincing evidence. Martin v. Winfield, 455 So.2d at 764; Gulf National Bank v. Wallace, 394 So.2d 864, 865 (Miss. 1981); Clement v. R.L. Burns Corp., 373 So.2d 790, 795 (Miss. 1979); Hamilton v. McGill, 352 So.2d at 831; Crawford v. Smith Bros. Lumber Co., Inc., 274 So.2d at 677. Furthermore, "fraud is essentially a question of fact."
"This burden ... is a function of the degree of confidence we should have in the factual determination that one has perpetrated a fraud." Great Southern National Bank v. McCullough, 595 So.2d 1282, 1289 (Miss. 1992) (emphasis added).
Application of the law to the evidence and viewing, as we must, the facts in the light most favorable to Enertec, leads to the conclusion that material issues of fact exist.
Enertec claims that Tri-State made all of the above listed representations, and to the extent that such representations were promises to act in the future they were made when there was a present intent not to perform, as evinced by the Agent affidavit; Tri-State disagrees. Certainly disposition of this issue requires a determination by a finder of fact.

Claims against Pan-Brick
As correctly asserted by Pan-Brick, the only claim Enertec made against it is the claim of interference with business relations. Enertec claims that by entering into the Pan-Brick/Tri-State agreement both defendants placed it in constant breach of the licensing agreement and intended to put it out of business. It asserts that neither Pan-Brick nor Tri-State had any right to do anything in the territories licensed to Enertec regarding manufacturing or selling the panels except through Enertec. It accuses both of preventing it from producing panels.
Enertec cannot overcome the hurdle of showing that Pan-Brick's actions of entering into the agreement was calculated to cause damage. Pan-Brick via the licensing agreement granted to Enertec a license to manufacture panels with its trademark. In consideration for the use of its trademark and technology, Pan-Brick was to receive royalties from the sales of the panels. Nothing in the May 21 agreement provides a motive for Pan-Brick to cause Enertec harm. As noted by Pan-Brick, it is nonsensical to contend that it would try or that it intended to destroy its license given to Enertec, Specifically, it states:
Why would Pan-Brick try to destroy its only license and only manufacturer in the United States? And even if Pan-Brick were so foolish as to try to undermine its only toe-hold in this vast new market area, why would it conspire or cooperate to replace Enertec with Tri-State, of whose proposed role it had been made aware, by Enertec, long before May 21, or May 24, 1984, and with whom it easily could have contracted instead of Enertec?
Pan-Brick calls our attention to Matsushita Electric Industrial Co., Ltd. v. Zenith *331 Radio Corporation, 475 U.S. 574, 596, 106 S.Ct. 1348, 89 L.Ed.2d 538, 558 (1986). There, American manufacturers of consumer electronic products brought suit against Japanese competitors in Pennsylvania district court alleging that these competitors violated provisions of the Sherman Antitrust Act, the Robinson Patman Act, as well as other federal statutes. Particularly, it was claimed that Japanese companies had conspired since the 1950's to drive domestic firms from the American market, by maintaining artificially high prices in Japan and selling at a loss in the United States. The district court granted the Japanese companies' motion for summary judgment; the court of appeals reversed and remanded for further proceedings, determining that a reasonable fact-finder could find a conspiracy to depress prices. On appeal, the United States Supreme Court reversed and remanded the case for further proceedings. Specifically, the Court held that
the absence of any plausible motive to engage in conduct is highly relevant to whether a `genuine issue for trial' exists within the meaning of Rule 56(e). Lack of motive bears on the range of permissible conclusions that might be drawn from ambiguous evidence: if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.
Id. 475 U.S. at 596-97, 106 S.Ct. at 1361, 89 L.Ed.2d at 559. Here, Enertec's arguments against Pan-Brick for interference with business relations are just as implausible as that of the American companies in Matsushita. Thus, no genuine issue of material fact is presented and judgment summarily disposing of the claim against Pan-Brick should be affirmed. What is more, Enertec offers no evidentiary support, nor does the record reveal any for its claim that Pan-Brick intended not to honor the licensing agreement.
Enertec only sued Pan-Brick for malicious interference. On appeal, it lodges for the first time a claim for fraud against Pan-Brick[7], but offers no support. Additionally, all of its representations concern Enertec only, not Pan-Brick. Thus, Enertec cannot, as far as Pan-Brick is concerned, overcome the hurdle imposed by Miss.R.Civ.Pro. 9(b) concerning specificity of averments constituting or alleging fraud because it makes no such statements or averments. Further, as held in McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494 (1963), fraud cannot be inferred or presumed and cannot be charged in general terms. Specific facts which constitute fraud must be definitely averred.
Enertec's failure to comply with both the rule and well-settled case law is fatal to its claim against Pan-Brick for fraud.
Pan-Brick and Tri-State argue that Enertec's claim is barred by the one-year statute of limitations found in Miss. Code Ann. § 15-1-35 (Supp. 1991). They contend that although the statute clearly applies to the enumerated torts listed therein, the listing is not exclusive and the statute also applies to non-enumerated torts as well. Enertec argues that its action is governed by section 15-1-49. These statutes provide:
§ 15-1-35. Limitations applicable to actions for certain torts.
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.
§ 15-1-49. Limitations applicable to actions not otherwise specifically provided for.
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued and not after.

*332 (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.
In support, the defendants rely upon Dennis v. Traveler's Insurance Co., 234 So.2d 624 (Miss. 1970), where the Court held that the statute applied to an action brought for a "willful, malicious, and irresponsible ... threat of criminal prosecution... to enforce a purported civil debt." The Court reasoned that:
It is clear that the Miss. Code Ann. § 732 (1956) [predecessor of § 15-1-35], which provides an inclusive listing of the recognized intentional torts is controlling in the case at bar. There can be no escape from the bar of the statute of limitations applicable to intentional torts by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent prohibition of the statute.
Id. at 626.
The Court held that the letter, which was the basis for the action at bar, fell within the purview of that statute under the category of "menace." The Court noted that the term "menace" meant the same thing as threat. Thus, since the letter written by Travelers was threatening, its actions fall within the category of menace.
We need not address the litany of federal cases cited by the parties, which, using Dennis as a springboard, extended the applicability of the one-year statute of limitations to other actions involving intentional torts. This Court has
consistently held in many cases ... that where a statute enumerates and specifies the subject of things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause, those not of like kind or classification as those enumerated.
Southwest Drug Company v. Howard Brothers Pharmacy of Jackson, Inc., 320 So.2d 776, 779 (Miss. 1975).
Even a casual reading of the statute leads inescapably to the conclusion that it does not cover, and was not intended to cover, all intentional tortious conduct. Actions based on deceit and intentional damage to property are conspicuously absent. Surely such intentional wrongs were recognized intentional torts. The enumerated torts address damage to persons or their reputations exclusively. Miss Code Ann. § 15-1-35 (1972). None of them addresses actions causing damage to property, tangible or intangible. Id.[8]
Thus, in Brister v. Dunaway, 149 Miss. 5, 115 So. 36 (1928) this Court held the one-year statute inapplicable to an action for alienation of affections, a tort involving the intentional interference with marital relations. See, Stanton v. Cox, 162 Miss. 438, 139 So. 458 (1932). Similarly, in Dunn v. Dent, 169 Miss. 574, 153 So. 798 (1934) this Court noted without discussion that the six-year period of limitations in the predecessor to Miss. Code Ann. § 15-1-49 applied to an action brought for deceit by false representation as to the number of acres in a tract of land sold. In Bush v. City of Laurel, 234 Miss. 93, 105 So.2d 562 (1958), we refused to apply the one-year statute to an action in trespass. More recently, in Southern Land & Resources Co., Inc. v. Dobbs, 467 So.2d 652 (Miss. 1985), we applied the six-year rather than the one-year statute to an action for wrongful foreclosure.
*333 Clearly then, the fact that wrongful conduct is alleged to be intentional does not determine which statute controls. Dennis means no more than that the absence of a label is, similarly, not controlling. Where, as there, the conduct alleged may be fairly categorized as one of the enumerated torts, the one-year statute applies. Otherwise, it does not. We will not squeeze all intentional wrongs into the actions enumerated.
Here the claims are for malicious interference with business relations and fraud. No one seriously argues that actions for fraud are covered by § 15-1-35. Dunn v. Dent, 169 Miss. at 574, 153 So. at 798-99. Pan Brick and Tri-State do claim that the malicious interference claim is barred. That claim, however, simply does not fit with any of the enumerated torts in the statute. The closest fit is with slander of title. The gravamen of that cause of action, however, is a false statement concerning ownership of property. Walley v. Hunt, 212 Miss. at 304, 54 So.2d 393. The conduct here alleged is not of the type reached by that cause of action.
In sum, Enertec's claims are not time barred by application of § 15-1-35 because its claims are not fairly embodied in any of the causes there enumerated.
The grant of summary judgment is reversed and the case remanded for further proceedings.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
ROBERTS, J., not participating according to supreme court internal rules.
NOTES
[1] The facts are taken from the "Memorandum Opinion and Order" issued by the district court.
[2] Pan-Brick owns patents covering a system incorporating plywood or other forms of sheathing, insulation materials and brick slices or other facing material. The panels made from the process are used to provide exterior siding for residential and commercial buildings.
[3] Entertec later acquired a license to sell panels in Texas.
[4] Tri-State attempts to impose the additional requirement that conduct supporting a tortious interference claim must be directed at a third party, not the plaintiff. This is the basis for its argument that Entertec's claim is one for breach of contract and not interference. This argument is without merit. Although often acts that satisfy the causation requirement will be directed at the third person with whom the plaintiff had a business expectancy, here Pan-Brick's conduct interfering with the plaintiff may suffice. Restatement (Second) of Torts § 766B(b) (1979); American Business Interiors v. Haworth, Inc., 798 F.2d 1135, 1143-1144 n. 7 (8th Cir.1986).
[5] Agent was employed by Tri-State from the Spring of 1984 until July of 1985, as a marketing representative in the Pan-Brick Division.

Tri-State argues that Agent's testimony is privileged; it claims that the affidavit presents alleged communications between Tri-State and its attorneys. Thus, it is protected from disclosure pursuant to Miss.R.Evid. 502(a).
Entertec responds that the record does not reveal whether the alleged occurrence, actions and statements Agent states took place were confidential. It argues just because lawyers were present, does not mean that the communication is privileged.
Whether or not the affidavit contains privileged information is a question for a fact-finder. The record does not permit a determination whether these statements allegedly made by Tri-State officials were communications to which the privilege would attach. For purposes of this appeal, we must treat the statements as non-privileged.
[6] Entertec admits that although the cost overruns and delays were quite troubling, these overdrafts were caused by actions of Pan-Brick and Tri-State.
[7] On the authority of Methodist Hospitals of Memphis v. Marsh, 518 So.2d 1227 (Miss. 1988), the issue of fraud is not properly before this Court, because it is now being raised for the first time on this appeal.
[8] One exception, arguably, is the action for "slander of title." The phrase, however, "is commonly employed to describe words or conduct which bring or tend to bring in question the right or title of another to particular property, as distinguished from the disparagement of the property itself." Walley v. Hunt, 212 Miss. 294, 304, 54 So.2d 393 (1951). The action is closely related to defamation of the person and the same period of limitations is applied almost universally. Old Plantation Corp. v. Maule Industries, Inc., 68 So.2d 180 (Fla. 1953). The damage suffered by the person results from a false perception regarding the state of title rather than some physical damage to the property in question.