802 So.2d 1062 (2001)
William G. GASPARRINI, Individually and as Agent for Applied Psychology Center, P.C., Appellants
v.
Gregory BREDEMEIER and Sandra Bredemeier, Appellees.
No. 2000-CA-01537-COA.
Court of Appeals of Mississippi.
December 18, 2001.
*1063 Chester D. Nicholson, Gulfport, Gail D. Nicholson, Austin, TX, Attorneys for Appellants.
Brett K. Williams, Kevin C. Bradley, Pascagoula, Attorneys for Appellees.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Dr. William Gasparrini appeals the summary judgment entered by the trial court against him in this suit. Gasparrini brought suit in the Harrison County Circuit Court on February 27, 1997. He sought damages against Major Rogers and several other fictitious parties for false light, invasion of privacy, civil conspiracy, tortious interference with business relations, defamation, abuse of process, and malicious prosecution. After discovery, Gasparrini filed a motion to substitute Sandra and Gregory Bredemeier for two of the designated fictitious parties. The Bredemeiers moved for summary judgment and all claims against them were dismissed. Gasparrini appeals assigning as error:
I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE BASIS THAT STATUTE OF LIMITATIONS BARRED THE CLAIMS OF DEFAMATION, FALSE LIGHT, INVASION OF PRIVACY AND CIVIL CONSPIRACY.
II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE CLAIM OF TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.
III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE BREDEMEIERS ON THE CLAIMS OF MALICIOUS PROSECUTION AND ABUSE OF PROCESS AND CONTEMPT OF COURT.
We conclude that the trial court erroneously granted summary judgment on issues I and II; therefore, we reverse and remand for further proceedings. However, we find that the appellant failed to cite any authority in support of his argument pertaining to issue III; as such, we affirm the trial court's dismissal of Gasparrini's malicious prosecution, abuse of process, and contempt of court claims.

*1064 STATEMENT OF THE FACTS
¶ 2. In 1993, Dr. William Gasparrini, a psychologist, was appointed by Chancellor J.N. Randall to perform a psychological evaluation on Sandra Bredemeier and her two children who were the subject of a custody dispute. After extensive testing, Gasparrini concluded that Sandra's former husband, Gary Jackson, should have primary custody of the two children. Chancellor Randall entered a judgment consistent with Gasparrini's findings and his decision was later affirmed by the Mississippi Supreme Court in Bredemeier v. Jackson, 689 So.2d 770 (Miss.1997). Thereafter, Sandra and Gregory Bredemeier, her second husband, began placing advertisements in the local newspaper, seeking others who, like Sandra, had lost custody of their children through an order by Chancellor Randall after being evaluated by Dr. Gasparrini. People began responding to the advertisements and congregating at the Bredemeier's house. One of the individuals was named Rhonda Rogers, a. k. a. Major Rogers, a U.S. Army retiree.
¶ 3. Major Rogers, just like Sandra, lost the primary custody of her children after Gasparrini, at the request of Chancellor Randall, performed a standard custody evaluation. Unlike Sandra, Major Rogers never appealed the chancellor's decision. Instead, Major Rogers, along with the Bredemeiers, filed ethical complaints against Gasparrini with the Mississippi Board of Psychological Examiners (MBPE). The MBPE dismissed the complaints as frivolous. Aggrieved, both Major Rogers and the Bredemeiers filed similar ethical complaints with the American Psychological Association (APA). Upon receipt of Rogers's complaint, the APA decided to conduct an administrative investigation and informed Major Rogers accordingly. After receiving notice of the investigation, Major Rogers sent a letter to each of Gasparrini's employers and persons he dealt with on a professional basis, stating that Gasparrini was being investigated for ethical violations by the APA. Major Rogers never mentioned that the MBPE had already dismissed the claims. Furthermore, after the APA rejected Major Rogers's complaint, she refused to inform the recipients of her letters that Gasparrini had been absolved of all fault.
¶ 4. As a result of Major Rogers's letters, Gasparrini's business suffered. In addition to other economic injuries set out in the record, Gasparrini lost a contract with Keesler Air Force Base which provided him with the exclusive right to provide psychological testing to children inside the Keesler Pediatric Clinic, Keesler Psychiatric Outpatient Mental Health Center, and Keesler Family Advocacy Program. Likewise, Gulfport Memorial Hospital terminated Gasparrini's services after receiving a letter from Major Rogers; Gasparrini had worked with Memorial Hospital for over nine years without incident. In all, Gasparrini demonstrated that his annual gross receipts decreased from $800,000 to approximately $600,000 after the letter had been mailed.
¶ 5. Gasparrini filed suit against Major Rogers on February 27, 1997, exactly one year after Major Rogers mailed out the letters to Gasparrini's employers and business associates. Also included in the suit was a set of fictitious parties designated as "other persons yet unknown." Gasparrini deposed the Bredemeiers on July 15, 1997. The Bredemeiers denied any involvement in the letter campaign. Thirteen days later Gasparrini deposed Major Rogers. During the deposition Major Rogers contradicted the Bredemeiers' testimony and linked them to the letter writing campaign. On August 1, 1997, four days after the *1065 Rogers deposition, Gasparrini filed a motion to substitute parties, swapping Gregory and Sandra Bredemeier for the designated fictitious parties.

STANDARD OF REVIEW
¶ 6. This Court conducts de novo review of orders granting summary judgment and will review all evidentiary matters before it. Aetna Cas. & Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996). We will view all evidence in a light most favorable to the party against whom the motion was made. Id. Where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment should be granted in favor of the moving party. Cothern v. Vickers, Inc., 759 So.2d 1241, 1245 (¶ 5) (Miss.2000). The moving party has the burden of demonstrating that there is no genuine issue of material fact. Id. Where there is the slightest doubt as to whether a factual issue exists, the court should resolve the issue in favor of the non-moving party. Id.

LAW AND ANALYSIS

I. DID THE STATUTE OF LIMITATIONS RUN ON THE CLAIMS OF DEFAMATION, FALSE LIGHT, INVASION OF PRIVACY AND CIVIL CONSPIRACY?
¶ 7. Gasparrini argues that the trial court erred in granting summary judgment in favor of the Bredemeiers for the claims of defamation, false light, invasion of privacy and civil conspiracy on the basis that the one year statute of limitations had run. Gasparrini asserts that he filed the original complaint against Major Rogers and several fictitious parties within one year from the date on which the cause of action on each of the stated claims had accrued. Furthermore, he contends that Mississippi Rules of Civil Procedure 9(h) and 15(c) permitted him to substitute the Bredemeiers for a fictitious party and that such substitution related back to the date of the original filing.
¶ 8. Mississippi Rule of Civil Procedure 9(h) provides:
When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name and giving proper notice to the opposing party.
M.R.C.P. 9(h). Rule 15(c) contains the additional language that:
An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading.
M.R.C.P. 15(c)(2).
¶ 9. The Bredemeiers assert that Gasparrini had always suspected and accused them of the attacks against him; therefore, they contend that he was not entitled to the benefits of Rule 9(h) and 15(c)(2) as he was never ignorant of their names and involvement. Accordingly, the critical question to be determined is whether Gasparrini was ignorant of the Bredemeiers' names when the original complaint was filed. The Mississippi Supreme Court addressed this issue in Womble v. Singing River Hosp., 618 So.2d 1252 (Miss.1993), where it stated:
It is a principle of general application, though, that ignorance of the opposing party for fictitious party practice extends beyond mere lack of knowledge of the opposing party's name. Even if the plaintiff knows the true name of the person, he is still ignorant of his name if he lacks knowledge of the facts giving *1066 him a cause of action against that person.

Id. at 1267. The purpose of Rule 9(h) is "to provide a mechanism to bring in responsible parties, known, but unidentified, who can only be ascertained through the use of judicial mechanisms such as discovery." Doe v. Mississippi Blood Servs., Inc., 704 So.2d 1016, 1019 (¶ 13) (Miss.1997).
¶ 10. Gasparrini filed his initial complaint within the applicable one-year statute of limitations governing intentional torts. See Miss. code Ann. § 15-1-35 (Rev.1995). See also City of Mound Bayou v. Johnson, 562 So.2d 1212, 1218 (Miss. 1990) (noting that section 15-1-35 applies to all actions substantially similar to the eight enumerated intentional torts). Approximately five months later, Gasparrini followed the procedure set out in Rule 9(h) to substitute Sandra and Gregory Bredemeier in place of the fictitious parties. Contrary to the Bredemeiers' assertions, we find that Gasparrini had no means for ascertaining the extent of the Bredemeiers' involvement until the conclusion of discovery.
¶ 11. During their deposition, Sandra and Gregory Bredemeier admitted that Major Rogers had been a guest in their house on several occasions. However, they denied that they encouraged, aided or assisted Major Rogers in disseminating the letters to Gasparrini's employers. Moreover, the Bredemeiers denied having any knowledge of Major Rogers's intentions prior to the letter writing campaign. Thirteen days later, counsel for Gasparrini deposed Major Rogers. Major Rogers admitted that she often drafted complaint letters using the Bredemeiers' typewriter while at their house. Likewise, Major Rogers, in direct contradiction to the Bredemeiers' testimony, admitted that she had a specific discussion with the Bredemeiers about contacting local health care providers and advising them of the APA investigation prior to mailing out the letters. Major Rogers explicitly stated that the Bredemeiers encouraged her to mail the letters. Moreover, she claimed that Sandra Bredemeier provided her with the list of addresses where Gasparrini's employers could be found. Given the various contradictions in the testimonies and the absence of physical evidence in this case, we find that Gasparrini was ignorant, for the purposes of Rule 9(h), of the Bredemeiers' involvement in the underlying action until the Rogers deposition.
¶ 12. Although we find that Gasparrini was truly ignorant of the facts giving him a cause of action against the Bredemeiers, our inquiry does not end there. The Mississippi Supreme Court has stated that "the relation back privilege provided for fictitious parties under Rule 15(c)(2) requires the plaintiff to actually exercise a reasonably diligent inquiry into the identity of the fictitious party." Doe, 704 So.2d at 1019 (¶ 13). In other words, Rule 9(h) is not an open invitation for plaintiffs to sit on their rights. Rawson v. Jones, 1999-CA-00257-SCT, ___ So.2d ___ (¶ 7), 2001 WL 723248 (Miss. June 28, 2001). This Court will make a strict inquiry as to whether the plaintiff exercised reasonable diligence in ascertaining the fictitious party's real identity. Doe, 704 So.2d at 1019 (¶ 13).
¶ 13. In Doe, Womble and Rawson, the Mississippi Supreme Court found that the reasonable availability of medical records from the hospitals should have alerted the plaintiffs as to the true identities of the parties. Rawson, 1999-CA-00257-SCT at (¶ 8), ___ So.2d at ___. However, each of those cases pertained to medical malpractice actions, where discovery of the defendants' true identities could have been *1067 ascertained from physical as well as testimonial evidence. As such, we find the present case factually distinguishable.
¶ 14. In the case at bar, Gasparrini filed a motion to substitute the Bredemeiers only four days after deposing Major Rogers. As noted, prior to Major Rogers's deposition, Gasparrini had no way of ascertaining the extent and nature of the Bredemeiers' involvement in the underlying claims. Unlike Doe, Womble, and Rawson, Gasparrini did not have the aid of medical records and other physical evidence while trying to identify the responsible parties. Instead, Gasparrini faced an angry and unyielding group of individuals who blamed him for the loss of their children. However, once discovery began, Gasparrini was more than diligent in his pursuit to ascertain each of the identities represented by the fictitious parties. As such, we reverse and remand for further proceedings on each issue dismissed by the trial court as time barred.

II. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE BREDEMEIERS ON THE CLAIM OF TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS?
¶ 15. Upon a motion by the Bredemeiers, the trial judge dismissed Gasparrini's claim for tortious interference with business relations (hereinafter tortious interference), finding that Gasparrini had not shown that the injuries to his business were caused by the Bredemeiers. After looking at the record as a whole, we find that there is a material issue of fact as to each element comprising the claim of tortious interference.
¶ 16. A plaintiff must prove by a preponderance of the evidence four elements in order to succeed on a claim for tortious interference:
(1) The acts were willful and intentional;
(2) The acts were calculated to bring about damage to the plaintiffs business;
(3) The defendant's purpose to cause damage was neither right nor justifiable; and
(4) Actual damage and loss
MBF Corp. v. Century Bus. Communications, Inc., 663 So.2d 595, 598 (Miss.1995); Nichols v. Tri-State Brick and Tile Co., Inc., 608 So.2d 324, 328 (Miss.1992); Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So.2d 812, 818 (Miss.1996). In addition, "the remedy for the tort is damages, and the plaintiff must also show (1) a loss, and (2) that the defendant's conduct caused the loss." Cenac v. Murry, 609 So.2d 1257, 1271 (Miss.1992) (citing Prosser & Keeton, The Law of Torts § 130, 1010 (5th ed.1984)). See also Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So.2d 902, 912-13 (¶ 34-37) (Miss. 1998).
¶ 17. As the record shows, Gasparrini clearly put forth enough evidence to survive a motion for summary judgment as to the claim for tortious interference. First, Gasparrini established that the Bredemeiers' actions were intentional and willful. As Major Rogers noted in her deposition, the Bredemeiers encouraged her to mail the letters to Gasparrini's employers and even supplied her with the addresses where the employers could be reached. Second, Gasparrini demonstrated that the actions take by the Bredemeiers were directed at causing damage to Gasparrini's business. It goes without saying that letters sent to Gasparrini's employers, insinuating that he was an unethical psychologist, were intended to bring about one result, namely, to deter individuals and companies from employing Gasparrini. Third, a jury could reasonably conclude *1068 that there was little reason, at least justifiable reason, why the Bredemeiers, Major Rogers and others initiated this smear campaign against Gasparrini. At least one reasonable interpretation of the record would be that the Bredemeiers and their consortium of sympathizers were motivated by a single purpose; that is, their desire for retribution against Gasparrini caused by the conclusions he made as a court appointed expert. As Major Rogers stated, the purpose of the letters was to let those doing business with Gasparrini know that he was unethical. However, her conclusion that Gasparrini was unethical could reasonably be found to be frivolous and unjustified as being based solely on her disagreement with Gasparrini's conclusions as a court appointed expert in her former custody case. Finally, Gasparrini put forth enough evidence linking his damages to the actions of the Bredemeiers in order to survive a motion for summary judgment. Gasparrini illustrated how several of his former employers, including Gulfport Memorial Hospital and Keesler Air Force Base, terminated his employment immediately after receiving the letters from Major Harris. Furthermore, Gasparrini, who obtained approximately one court referral a week prior to the letter campaign, is no longer successful in obtaining referrals.
¶ 18. Although there are additional factors that might have contributed to Gasparrini's loss of employment, it is clear that after the letters were mailed to his employers his services were terminated and his annual gross receipts decreased from $800,000 to less than $600,000. The question as to the exact cause and the extent of damage is for the finder of fact to determine after a trial on the merits. Accordingly, we reverse the trial judge's ruling and remand this issue to the Harrison County Circuit Court.

III. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE BREDEMEIERS ON THE CLAIMS OF MALICIOUS PROSECUTION, ABUSE OF PROCESS, AND CONTEMPT OF COURT?
¶ 19. Gasparrini asserts that the trial court erred in rejecting his malicious prosecution and abuse of process claims on the basis that an investigation by the APA does not qualify as a civil proceeding. However, Gasparrini cites no authority in support of his position that Major Rogers and the Bredemeiers instituted a civil proceeding when they embarked on their letter writing campaign. Likewise, after extensive research on the issue, we cannot find any authority in support of Gasparrini's argument. As such, we find the issue procedurally barred. Yancey v. Yancey, 752 So.2d 1006, 1012 (¶ 21) (Miss.1999); Smith v. Dorsey, 599 So.2d 529, 532 (Miss. 1992); Pate v. State, 419 So.2d 1324, 1325-26 (Miss.1982); Ratcliff v. State, 752 So.2d 435 (¶ 7) (Miss.Ct.App.1999).
¶ 20. Gasparrini also argues that the trial judge should not have granted summary judgment on the claim of contempt of court. Specifically, Gasparrini requests this Court to find that a private cause of action for constructive contempt of court exists where a court appointed expert is caused harm for conclusions he rendered while acting as an official of the court. However, Gasparrini again fails to cite any authority for this proposition; therefore, we also find the issue procedurally barred.

CONCLUSION
¶ 21. Gasparrini was ignorant of the Bredemeiers involvement in the underlying action and his diligent compliance with *1069 the procedures set out in the Mississippi Rules of Civil Procedure 9(h) and 15(c)(2) enabled him to substitute the Bredemeiers for the designated fictitious parties. Therefore, we reverse and remand on the issues of defamation, false light, invasion of privacy, and civil conspiracy for further proceedings. Likewise, we find it necessary to reverse and remand on the issue of tortious interference with business relations as there is a material issue of fact as to each of the elements comprising the claim. Finally, we affirm the trial courts dismissal of Gasparrini's malicious prosecution, abuse of process, and contempt of court claims, finding that Gasparrini failed to cite any authority in support of his arguments.
¶ 22. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT ON THE CLAIMS OF DEFAMATION, FALSE LIGHT, INVASION OF PRIVACY, CIVIL CONSPIRACY AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS IS REVERSED AND REMANDED AND IS AFFIRMED ON ALL OTHER ISSUES. COSTS OF THIS APPEAL ARE EQUALLY ASSESSED TO THE APPELLANTS AND THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR. THOMAS, J., NOT PARTICIPATING.