United States Court of Appeals,

Fifth Circuit.

No. 93-7073.

Lucille BUFORD, Plaintiff-Appellant,

v.

Michael HOWE, M.D., Defendant-Appellee.

Jan. 11, 1994.

Appeal from the United States District Court for the Northern District of Mississippi.

Before SNEED*, REYNALDO G. GARZA and JOLLY, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Lucille Buford appeals the district court's grant of judgment as a matter of law against her. For the reasons given below, we AFFIRM the district court's evidentiary rulings. However, we REVERSE the district court's judgment as a matter of law against Mrs. Buford and REMAND for further proceedings.

I

STATEMENT OF FACTS

On August 22, 1983, Mrs. Lucille Buford, now a sixty-four year old resident of Starkville, Mississippi, visited Dr. Michael Howe, apparently complaining of abdominal pain.[1] Exactly what occurred during this and subsequent visits is unclear. According to Dr. Howe, he diagnosed Mrs. Buford as suffering from "pelvic relaxation," or uterine descensus. He based his diagnosis upon Mrs. Buford's description of a "pelvic-falling out" sensation, her history of pain while standing, and the pressure on her tailbone. Mrs. Buford, however, claims that she never complained of a "pelvic-falling out sensation." Although his office records do not mention any abnormalities of Mrs. Buford's uterus, she states that Dr. Howe informed her that her uterus was twice the size of a normal uterus, and that

---

*Senior Circuit Judge of the Ninth Circuit, sitting by designation.

[1]Before her surgery in 1983, Mrs. Buford had visited Dr. Howe several times with various complaints. On at least two earlier occasions, Mrs. Buford sought medical help for abdominal pain.

it had to be removed. According to Mrs. Buford, Dr. Howe told her that removal of the enlarged uterus would relieve the pain she had been experiencing in her legs and tail bone.

On Dr. Howe's recommendation, Mrs. Buford was admitted to Oktibbeha County Hospital on August 28. Again, it is unclear what occurred. According to Mrs. Buford, Dr. Howe's admitting notes state that the working diagnosis was chronic pain, fibroid tumors, and a uterus enlarged to twice the normal size, but no mention of uterine descensus. Dr. Howe states that although he dictated a history and physical on Mrs. Buford for her hospital admission, these notes were lost due to a problem with the dictating equipment. Consequently, he re-dictated the notes from memory twenty-three days after surgery. The new history states that Mrs. Buford complained of a "falling-out" sensation, chronic pain, dysfunctional uterine bleeding, and an enlarged uterus. Although the diagnosis of uterine descensus appeared in his office notes, that diagnosis did not appear in the hospital records.

The next day, August 29, Dr. Howe performed the hysterectomy. Following surgery, Mrs. Buford's uterus was sent to the pathology lab. The pathology report indicated that the uterus was about one half the normal size, rather than twice the normal size as Dr. Howe had originally diagnosed, and it contained no fibroid tumors. Dr. Howe never discussed the pathology report with Mrs. Buford. After recuperating, Mrs. Buford continued to experience the same pains in the top of her stomach and tailbone that the surgery was intended to alleviate. Mrs. Buford saw Dr. Howe one time after surgery, on September 30, 1983, and she did not complain of any problems. She has since seen other physicians, although she has never complained to them of pelvic pain.

Soon after Mrs. Buford's surgery, Mrs. Buford's daughter, Diane Buford, was also told by Dr. Howe that she should undergo a total hysterectomy. Dr. Howe diagnosed Diane as suffering from chronic pelvic pain, dysfunctional uterine bleeding, and fibroid tumors. On October 11, 1983, Dr. Howe removed Diane's uterus, ovaries, and fallopian tubes. The pathology report revealed that, like her mother, Diane in fact did not suffer from fibroid tumors. Eventually, Diane sought therapy from another doctor, and through this other doctor, Diane examined her pathology report which disclosed the absence of fibroid tumors. Diane sued Dr. Howe in October 1989, alleging medical malpractice.

According to Mrs. Buford, in June 1990, she too obtained copies of her medical records from Dr. Howe to take to another physician. In reviewing her records, Mrs. Buford for the first time became aware that Dr. Howe had diagnosed her as having problems she never experienced. Mrs. Buford compared her diagnosis with that of her daughter, and became suspicious because of the remarkable similarity. Mrs. Buford filed suit on February 19, 1991, more than seven years after surgery, alleging that her surgery was unnecessary. She sought both compensatory and punitive damages.

## II

## PROCEDURAL HISTORY

After filing suit, Mrs. Buford subpoenaed certain medical records of all patients on whom Dr. Howe had performed hysterectomies at Oktibbeha County Hospital. Both Dr. Howe and the hospital moved to quash the subpoena, and the hospital moved for a protective order on the basis that the request was burdensome, overly broad, and that it violated the privacy of the patients involved. The magistrate judge quashed the subpoena, and the district court affirmed.

Before trial, Dr. Howe filed a motion in limine to prevent Mrs. Buford from introducing into evidence any testimony or medical records[2] concerning the treatment of patients other than the plaintiff. The trial court sustained the doctor's motion. The case was later tried to a jury. After the plaintiff's case in chief, Dr. Howe moved for judgment as a matter of law, asserting that Mrs. Buford failed to make out a *prima facie* case, and that the applicable two-year statute of limitations barred her claim. The trial court granted Dr. Howe's motion, stating that Mrs. Buford failed to demonstrate that the statute of limitations had not run. Mrs. Buford timely appealed to this court.

## III

## DISCUSSION

Mrs. Buford claims the district court erred in: (1) granting judgment as a matter of law against her on the basis that the applicable statute of limitations bars her claim; (2) sustaining Dr.

---

[2]Mrs. Buford obtained these medical records through medical waivers signed by the patients involved.

Howe's motion in limine excluding evidence of hysterectomies performed by Dr. Howe on other patients; and (3) quashing her subpoena seeking records of other patients who had hysterectomies performed by Dr. Howe.

We find that the district court erred in granting judgment as a matter of law against Mrs. Buford. However, the district court properly sustained Dr. Howe's motion in limine, and quashed Mrs. Buford's subpoena.

A. *Statute of limitations*

Mrs. Buford argues that the district court erroneously granted judgment as a matter of law in favor of Dr. Howe on the basis that the applicable statute of limitations barred her cause of action. Mrs. Buford asserts that she had no way of knowing of her injury until she requested her medical records in June 1990,[3] and that her cause of action accrued when she discovered the misdiagnosis from the medical records.

Federal Rule of Civil Procedure 50 states that if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law...." In examining a district court's grant of judgment as a matter of law, this court reviews all of the evidence, viewing it in the light most favorable to the non-movant and drawing all reasonable inferences in the non-movant's favor. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). Judgment as a matter of law is proper only if,

> the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict ... On the other hand, if there is substantial evidence opposed to the motion[ ], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[ ] should be denied, and the case submitted to the jury.

*Id.*

The district court held that "[Mrs. Buford] knew in 1983 following her surgery that she continued to have the same problem she had prior to the surgery, chronic abdominal pain, and an additional problem, which arose after the surgery, the lack of sexual drive." Applying Mississippi law,

---

[3]According to Mississippi law, a patient is under no duty to request medical records. *Williams v. Kilgore,* 618 So.2d 51, 55 (Miss.1992).

the district court found "that with reasonable diligence, [Mrs. Buford] should have known during 1983 that she had an actionable injury since the surgery did not remedy her pain but rather caused further damage."

The Mississippi statute of limitations pertaining to medical negligence states that

[N]o claim in tort may be brought against a licensed physician ... for injuries ... arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

*Miss.Code Ann.* § 15-1-36(1). In construing this statute, the Mississippi Supreme Court has held that "the cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease." *Schiro v. American Tobacco Co.,* 611 So.2d 962, 965 (Miss.1992); *Smith v. Sanders,* 485 So.2d 1051, 1052 (Miss.1986).

We disagree with the district court. The fact that Mrs. Buford continued to have chronic abdominal pain only demonstrates that she knew or should have known that her surgery was unsuccessful. Mrs. Buford's cause of action, however, arises from an alleged unnecessary hysterectomy, not an unsuccessful one. Mrs. Buford's knowledge that her surgery was unsuccessful, does not, as a matter of law, entail that she knew or should have known that her surgery was unnecessary.[4] Rather, it is for the jury to resolve when Mrs. Buford, exercising reasonable diligence, knew or should have known of the injury.

Therefore, the district court erroneously granted judgment as a matter of law.

B. *Motion in limine*

Mrs. Buford contends that the district court erred in sustaining Dr. Howe's motion in limine, excluding evidence of other hysterectomies Dr. Howe performed. She argues that evidence of the other surgeries is essential to prove that Dr. Howe fraudulently induced women to submit to unnecessary surgeries for financial gain.

This court reviews rulings on motions in limine for abuse of discretion. *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300, 1306 (5th Cir.1991). Federal Rule of Evidence 404(b) states that

---

[4]This is the distinction that the dissent does not wish to recognize.

"evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, planning, knowledge, identity, or absence of mistake or accident...." This court has developed a two-step test to resolve these issues: "First, it must be determined that the extrinsic evidence offense is relevant to an issue other than defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet other requirements of Rule 403." *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

According to Mrs. Buford, in addition to her claim of negligent diagnosis, she has alleged that Dr. Howe fraudulently induced her to submit to surgery. Federal Rule of Civil Procedure 9(b) states that complaints alleging fraud or mistake must state those claims with "particularity." In this case, Mrs. Buford's complaint and the district court's pretrial order do not contain particular and specified allegations of fraudulent activity on behalf of Dr. Howe. As this court recently held, at a minimum, rule 9(b) requires the plaintiff to allege "the particulars of time, place and contents of the false representations...." *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 521 (5th Cir.1993); *see also Nichols v. Tri-State Brick & Tile, Co.,* 608 So.2d 324, 330 (Miss.1992) (stating the elements of fraudulent misrepresentation). Therefore, to the extent that the evidence relates to Mrs. Buford's fraudulent misrepresentation claim, the district court properly excluded the evidence.[5]

Mrs. Buford also contends that the evidence of the other surgeries is probative on the issue of punitive damages. The district court held that the evidence was not relevant to the punitive damage claim, and also noted that even if it were relevant, the evidence should be excluded because the probative value was outweighed by the prejudicial effect.

Whether evidence is admissible is a question within the sound discretion of the trial court.

---

[5]Since Dr. Howe allowed Mrs. Buford to present evidence of fraudulent misrepresentation, Mrs. Buford is entitled to amend her pleadings to conform to the evidence. *See* FED.R.CIV.P. 15(b). Once Mrs. Buford amends her pleadings, she can present evidence of the other hysterectomies, because she obtained these medical records through waivers signed by the patients involved.

"[T]he trial judge has wide discretion [in making a Rule 403 determination and] ... the appellate court will not reverse unless the trial judge has clearly abused his discretion." *Wright v. Hartford Accident & Indem. Co.,* 580 F.2d 809, 810 (5th Cir.1978).

We find that the trial court did not abuse its discretion in excluding evidence of the other surgeries performed by Dr. Howe.

C. *Mrs. Buford's subpoena*

Mrs. Buford subpoenaed records from the Oktibbeha County Hospital seeking

> a copy of all physicals and histories, operative reports, pathology reports, and discharge summaries of all patients on whom Dr. Michael Howe performed a hysterectomy, either total or partial, between the years of 1979 and 1988. The custodian is further instructed to obliterate the name and other identifying information as to each patient so that the privacy of the patient may be maintained.

The magistrate judge held that the records were not discoverable because the doctor-patient privilege protected the records even though identifying information was deleted. The magistrate judge further held that "the information sought by plaintiff is obtainable in less obtrusive ways by either deposing the defendant or submitting interrogatories."

Mrs. Buford argues that the district court erroneously determined that the Mississippi physician-patient privilege applied to the records she sought. The Mississippi case that most closely approximates this case is *Crawford v. Wall,* 593 So.2d 1014 (Miss.1992).[6] In *Crawford,* the plaintiffs sought to discover "a list of laparoscopic procedures performed by the defendant physicians by patient number, dates and type of procedures, along with certain equipment used...." *Id.* at 1015. The court determined without elaborating that the information contained within the list was not privileged under the physician-patient privilege because the privilege protects only that "knowledge derived by a physician ... by virtue of his professional relationship with the patient, or ... confidential communications made for the purpose of diagnosis or treatment of [a] physical, mental or emotional condition...." *Id.* at 1017.

Medical records, like the records Mrs. Buford seeks, are clearly derived by virtue of the

---

[6]This case was decided on January 5, 1992, approximately six months after the magistrate judge issued its order quashing the subpoena. Approximately four months after *Crawford* was decided, the district court affirmed the magistrate judge's order.

professional relationship between the patient and the doctor. *See Argonaut Ins. Co. v. Peralta,* 358 So.2d 232 (Fla. 3rd Dist.Ct.App.1978). Therefore, the district court correctly determined that the physician-patient privilege protected the medical records from disclosure.

IV

CONCLUSION

The action of the district court in sustaining Dr. Howe's motion in limine and quashing Mrs. Buford's subpoena is AFFIRMED. However, we REVERSE the district court's grant of judgment as a matter of law against Mrs. Buford and REMAND for further proceedings consistent with this opinion.

E. GRADY JOLLY, Circuit Judge, dissenting:

Because Mrs. Buford knew almost immediately after surgery that she had an injury, i.e., that the surgery had not addressed her physical complaints in the slightest, and because she should have known that her injury was actionable, i.e., that her medical problem had been misdiagnosed rendering her surgery unnecessary, I would affirm the district court's entry of judgment as a matter of law in favor of Dr. Howe. Furthermore, I would affirm the judgment because it is pellucid that Mrs. Buford failed to exercise reasonable diligence to discover the nature and cause of her injury—indeed, she exercised no diligence at all. I therefore respectfully dissent.

As the majority correctly articulates, the two-year statute of limitations does not begin to run until the patient discovers, or should have discovered, that she has a cause of action. *Womble v. Singing River Hospital,* 618 So.2d 1252, 1266 (Miss.1993); *Smith v. Sanders,* 485 So.2d 1051, 1052 (Miss.1986). "The focus is on the time that the patient discovers or should have discovered by the exercise of reasonable diligence, that he probably has an *actionable* injury." *Womble v. Singing River Hospital,* 618 So.2d at 1266. The time is *not* tolled theory by theory for a known actionable injury.

In this case, Mrs. Buford argues that she had no way of knowing she had an actionable injury until she had an opportunity to review her medical records. This is clearly not the case. Mrs. Buford

underwent surgery in an effort to alleviate pains at the top of her stomach and in her tailbone. After she recovered from the immediate post-operative effects of her surgery, she continued to suffer from *precisely the same pains* that the surgery was intended to allay. In spite of the fact that her pain continued and the surgery utterly failed to accomplish its intended purpose, Mrs. Buford—without offering any explanation for her failure to do so—never inquired as to the source of these identical pains nor as to why she continued to suffer these pains after a plainly unsuccessful operation. In short, almost immediately after her operation, she knew that her malady had been misdiagnosed, i.e., that a hysterectomy was an inappropriate and unnecessary treatment for her symptoms. To say that she had no basis for knowing that the surgery was unnecessary until she saw her records is a serious misperception: her records only *confirmed* that the surgery was unnecessary.

It was not until nearly seven years after surgery that Mrs. Buford began to question the propriety of this surgery. A reaso nable person acting with due diligence, when faced with this continued identical pain, would have made *some* inquiry—an inquiry that would have led her to the same conclusion reached many years later, that she had a basis for a lawsuit against Dr. Howe. *See Wilder v. St. Joseph Hospital,* 225 Miss. 42, 82 So.2d 651, 653 (1955) ("In view of the allegation of continuous pain, etc., from the date of the operation, it is obvious that the plaintiff in the exercise of ordinary care, should have discovered her alleged condition within [the statute of limitations]"). Mrs. Buford exercised absolutely *no* diligence in determining whether she had an actionable injury, and she should be barred as a matter of law from asserting this action.

Because the majority, by offering no explanation or justification for Mrs. Buford's seven years of inaction, seems to deliberately close its eyes to the facts in this case, facts that objectively demonstrate both full knowledge of an actionable injury and the complete absence of diligence, I respectfully dissent.