# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 99-60174
Summary Calendar

LEROY SPRING, ADMINISTRATOR OF THE
ESTATE OF ELIZABETH REILLY, DECEASED,

Plaintiff-Appellant,

versus

BEVERLY ENTERPRISES MISSISSIPPI, INC. d/b/a
SOUTHWEST EXTENDED CARE CENTER,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
(3:96-CV-168-WS)

January 25, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges

PER CURIAM:[*]

This case involves an allegation of an assault and battery committed against a nursing home resident by an employee of the nursing home. At the close of the plaintiff's case at jury trial, the court granted the defendant's motion for judgment as a matter of law. For reasons stated below, we affirm the trial court's ruling regarding the judgment as a matter of law, but vacate the trial court's award of attorneys' fees and costs..

## FACTUAL AND PROCEDURAL HISTORY

Ms. Elizabeth Reilly was a 90 year-old nursing home resident at Southwest Extended Care Center (the "nursing home"), a California corporation with its principal place of business outside the state of Mississippi. One night while at the nursing home, Ms. Reilly used her call button to summon

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a nurse. According to Ms. Reilly, a nursing home employee entered her room, uttered "ah you," slapped her on the head and threw her call button away. She stated that she could not identify the person who slapped her, other than that the person was a woman. The incident was reported to Linda Hampton ("Hampton"), the director of the nursing home, and Gary Stafford ("Stafford"), the executive director of the nursing home. The following day, a full body examination was ordered to determine whether Ms. Reilly had sustained any bruising. The examination revealed no evidence that Ms. Reilley had been slapped.

In 1996, Leroy Spring ("Spring"), Ms. Reilly's nephew, filed a complaint as next-of-friend in Mississippi state district court against the nursing home alleging assault and battery. Spring sought compensatory and punitive damages. The case was removed to federal district court for the Southern District of Mississippi based on diversity of citizenship. The district court conducted a competency hearing to determine whether the suit should proceed in Ms. Reilly's name or in her nephew's name. The court determined that Ms. Reilly was competent and that the suit should proceed in her name. Before trial, Ms. Reilly passed away and Spring became Administrator of her estate. As such, Spring became the real party in interest under Federal Rules of Civil Procedure 17(a), and the suit proceeded to trial in Spring's name as the administrator of the estate. The first trial resulted in a mistrial based on an evidentiary ruling, which we address below. The court also dismissed the plaintiff's claims for punitive damages at the first trial. At the second trial, the nursing home moved for a judgment as a matter of law ("JMOL") at the close of the plaintiff's case. The court heard arguments and granted the nursing home's motion. The court also awarded the defendant attorneys' fees and costs. The plaintiff now appeals the court's judgment and evidentiary rulings below.

## DISCUSSION

Spring claims that the district court improperly granted judgment as a matter of law to the nursing home. Specifically, Spring contends that he established a prima facie case to prove the intentional torts of assault and battery under Mississippi law. Spring also attacks the district court's

evidentiary rulings.  Finally, Spring argues that the court erred when it  dismissed his claim for punitive damages and awarded attorneys' fees.

I.    District Court's Judgment as a Matter of Law

A.    Standard of Review

We review de novo a trial court's grant of a judgment pursuant to Rule 50(a) as a matter of law, see Deffenbaugh Williams v. Walmart Stores, Inc. 188 F.3d 278, 285 (5th Cir. 1999), applying the same standard that the district court used. Aetna Gas &. Sur. Co v. Pendleton Detectives of Miss, Inc, 182 F.3d 376, 377 (5th Cir. 1999).   A court may grant a JMOL if a party has been fully heard by the jury on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.  See Rule 50(a).  The motion is properly granted if the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict. Information Communication Corp. V. Unisys Corp., 181 F.3d 629, 633 (5th Cir. 1999).  In reviewing a Rule 50(a) judgment, we consider all the evidence--not just the evidence which supports the non-mover's case. See id.  A mere scintilla of evidence is insufficient to present a question for the jury  See Deffenbaugh,.188 F.3d at 285.

B.    Assault and Battery Under Mississippi Law

In the instant case, the district court ruled that the plaintiff failed to sustain his claims of intentional torts, namely assault and battery, at the close of his case.[2]   Because this case comes to us under diversity jurisdiction, we look to Mississippi law regarding  the substantive elements of the intentional torts of assault and battery.  See Rogers v. Corrosion Prods., Inc., 42 F.3d 292, 295 (5th Cir.1995) (citing  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

---

  [2] In granting the JMOL, the district court opined from the bench that in the alternative the suit should be dismissed  because the plaintiff failed to prove damages that met the jurisdictional "amount in controversy" ($75,000) under diversity jurisdiction.  However, it is well settled that once a federal court exercises jurisdiction under 28 U.S.C. § 1332, subsequent events which reduces the amount claimed under the jurisdictional minimum will not deprive the court of jurisdiction. See Seafoam, Inc. v. Barrier Systems, Inc,, 830 F.3d 62, 66 (5th Cir. 1987).  Nevertheless, this erroneous alternative ruling is inconsequential since we find adequate grounds to support the district court's JMOL which we discuss below.

3

To determine state substantive law, we look to the state's constitution, statutes, and final decisions of the state's highest court. See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir.1992). Assault and battery are intentional torts under Mississippi law. See Miss. Code Ann. § 15-1-35. An assault occurs where a person "acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and the other is thereby put in such imminent apprehension." See Webb v. Jackson, 583 So.2d 946, 951 (Miss. 1991)(quoting the Restatement (Second) of Torts § 21 (1965)). A battery goes one step further in that harmful contact actually occurs. Id. (quoting the Restatement (Second) or Torts § 13 (1965)). Essential to each is the element of intent.

Our de novo review of the trial transcript supports the district court's JMOL. The only substantive evidence introduced to establish the assault and battery came from Ms. Reilly's video taped testimony. She stated that someone brushed across her cheek seemingly slapping her. However, she could not identify the person who had allegedly slapped her. Although intent may be inferred from the facts and circumstances, Spring failed to put forth evidence that would allow a reasonable inference of intent. The examination conducted the day after the alleged incident revealed no physical bruising or marks to indicate that she was slapped or otherwise physically abused. Ms. Reilly testified that the alleged slap did not hurt her physically. Based on the scant evidence presented by the plaintiff, we find that the requisite intent was not established to sustain an action for an assault and battery.[3] Therefore, the district court correctly granted a JMOL for these claims.[4]

II.     District Court's Evidentiary Rulings

        A.      Hearsay (State-of-Mind Exception)

---

[3] Although the district court found that Spring failed to show that Ms. Reilly suffered actual damages, this finding is not dispositive to our holding since a showing of actual damages is not required to sustain an intentional tort action for assault and battery under Mississippi law. See Bumgart v. Bailey, 247 Miss. 604, 156 So.2d 823 (Miss. 1963).

[4] Because we find that the plaintiff failed to establish the requisite intent for an assault and battery, we need not address whether vicarious liability is applicable.

Spring claims that the district court improperly precluded him from testifying that Ms. Reilly had told him that the incident had "scared" her and made her afraid. Although the statement is hearsay, Springs argues that the testimony was admissible because it related to Ms. Reilly's state of mind. We review a district court's evidentiary rulings for abuse of discretion. See Wilson v. Woods, 163 F.3d 935, 936 (5th Cir.1999); Caparotta v. Entergy Corp., 168 F.3d 754, 755-56 (5th Cir.1999). Under the Federal Rules of Evidence 808(3), a statement as to the declarant's then existing state of mind is admissible, and thus is an exception to the general prohibition against hearsay testimony under Federal Rules of Evidence 802. Although a witness may testify to what the declarant stated as to the declarant's then existing state of mind, the "state-of-mind exception does not permit the witness to relate any of the declarant's statements as to <u>why</u> he held the particular state of mind, or <u>what</u> he might have believed that would have induced the state of mind." United States v. Liu, 960 F.2d 449, 452 (5th Cir. 1992)(quoting United States v. Cohen, 621 F.2d 1223, 1225 (5th Cir. 1990) reh'g denied, 636 F.2d 315 (5th Cir. 1981) (emphasis added).

In the instant case, the district court granted a mistrial in the first trial because the plaintiff improperly attempted to introduce that Ms. Reilly was scared because of the alleged incident. At the second trial, Spring proffered testimony to the court that Ms. Reilly told him that the alleged incident scared her and made her afraid. Thus, we find that the district court properly excluded the testimony because Spring's proffer related to the <u>reason</u> <u>why</u> Ms. Reilly was scared and afraid, which is not permissible under the state-of-mind exception to the hearsay prohibition. Therefore, the district court did not abuse its discretion.

B.      Second Slapping Incident

Spring claims that the district court improperly precluded him from testifying that Ms. Reilly had told him during a visit to the nursing home about a second slapping incident that allegedly occurred after the initial complaint was filed. Springs argues that the testimony corroborates the first incident which forms the basis for the instant case. The court ruled that the evidence was inadmissible hearsay.

5

Hearsay is an out-of-court statement offered for the truth of the matter asserted. <u>See</u> FED.R.EVID. 801(a). The statement Ms. Reilly related to Spring out of court about the second slapping incident is classic hearsay. Spring does not establish that the testimony meets any of the hearsay exemptions or exceptions under the Federal Rules of Evidence Furthermore, Spring does not show that the statement was offered for a proper non-hearsay purpose, for example, notice or state of mind. As such, the trial court did not abuse its discretion.

C.    Ms. Reilly's Unwillingness to File Suit    .

Spring claims that the district court erred when it permitted the nursing home to read into evidence statements from Ms. Reilly's deposition regarding her unwillingness to file a lawsuit against the nursing home. Spring claims that the evidence was unduly prejudicial. At trial, the district court ruled that Ms. Reilly's deposition testimony regarding her unwillingness to sue the nursing home was relevant to show her state of mind and the quantum of harm.

Under Federal Rules of Evidence 403, relevant evidence may nonetheless be excluded if its probative value is substantially outweighed by unfair prejudice. Whether evidence is admissible is a question within the sound discretion of the trial court. "[T]he trial judge has wide discretion [in making a Rule 403 determination and] . . . the appellate court will not reverse unless the trial [court] has clearly abused its discretion." <u>Buford v. Howe</u>, 10 F.3d 1184, 1189 (5th Cir. 1994) (quoting <u>Wright v. Hartford Accident & Indem. Co</u>., 580 F.2d 809, 810 (5th Cir.1978)). In the instant case, the plaintiff's claim for damages included physical injury, humiliation, and mental anguish. As such, the Ms. Reilly's unwillingness to proceed with the lawsuit is probative to the quantum of damages she allegedly suffered. Although, the testimony is prejudicial to the plaintiff's case, the mere fact that evidence is prejudicial is insufficient to exclude its admissibility under Rule 403. In order to trump the presumption of admissibility of relevant evidence under Rule 403, the prejudicial nature of the evidence must be <u>unfair</u> <u>and</u> the prejudice must <u>substantially</u> outweigh the evidence's probative value. Because Spring does not overcome the presumption of admissibility under Rule 403, the district court did not abuse its discretion.

6

D. Abuse Involving Another Resident

Spring claims that the court erred when it precluded him from testifying that Ms. Reilly had told him about another incident of abuse involving a former roommate of Ms. Reilly at the nursing home that occurred before incident involving Ms. Reilly. Spring argues that the testimony is relevant because it shows that Ms. Reilly was afraid that the nursing home would treat her in a similar fashion. The court excluded the evidence because Spring could not establish a proximate time frame for when the incident occurred.

Ms. Reilly resided at the nursing home from approximately1992 to 1996. The alleged incident involving Ms. Reilly occurred in 1996. Because Spring could not establish a time frame for when the incident occurred involving the roommate within the 4-year period Ms. Reilly resided at the nursing home, Spring cannot demonstrate that the concerns the district court expressed regarding remoteness were unwarranted. Although Spring argues that the alleged incident was admissible state-of-mind evidence, Spring cannot not testify as to what caused or produced Ms. Reilly's state of mind. See Liu, supra. Under these circumstances, the district court's ruling did not amount to an abuse of discretion.

III. Punitive Damages

Spring contends that the court improperly dismissed his claim for punitive damages. Under Mississippi law, punitive damages are generally awarded for heightened torts which are the product of gross, callous, or wanton conduct, often accompanied by fraud and deceit. State Farm Fire and Casualty Co. v. Simpson, 477 So.2d 242 (Miss.1985). Moreover, Mississippi law is clear that punitive damages are not recoverable absent an award of actual damages. Hopewell Enters., Inc. v. Trustmark Nat'l. Bank, 680 So.2d 812, 820 (Miss.1996); Allen v. Ritter, 235 So.2d 253 (Miss.1970); Miss. Power Co. v. Jones, 369 So.2d 1381 (Miss.1979).

Because Spring failed to establish that the nursing home engaged in improper, intentional, malicious, or wanton conduct, or that Ms. Reilly suffered actual damages, we find that the district court did not err or abuse its discretion when it dismissed the punitive damages claim.

IV.     Attorneys' Fees

Spring claims that the district court abused its discretion when it awarded attorneys' fees to the nursing home.  To support this contention, Spring points out that the nursing home did not request attorneys' fees in the pretrial order, nor did it request attorneys' fees after the JMOL was entered. Furthermore,  Spring contends that the attorneys' fees award was not imposed as a sanction pursuant to Rule 11 of the Federal Rules of Civil Procedure and that the district court did not make a detailed factual finding to support its attorneys' fees award.   As such, Spring maintains that the district court's sua sponte award of attorneys' fees amounted to an abuse of discretion.  After a careful review of  court's ruling, we find that Spring's claim has merit.

Under the "American Rule," the prevailing party generally is not entitled to recover attorneys' fees from the non-prevailing party.  See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); see also Galveston County Navigation District No. 1 v. Hopson Towing Company, Inc., 92 F.3d 353, 356 (5th Cir. 1998).  Unless provided by an enforceable contract or statute, litigants are responsible for their attorneys' fees. Id. at 255-57, 95 S.Ct. at 1621.  Although in the instant case, the parties did not enter a contract to award attorneys' fees nor was the attorneys fees' award was made pursuant to a statute, the court nevertheless has inherent powers to assess attorney's fees . . .  "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" Id. at 258-259, 95 S.Ct. at 1622 (citations omitted).   It is well settled, that the threshold for the use of this inherent power is high, and once the power is invoked, it must be exercised with restraint and discretion.  See Maguire Company v. City of Houston, 143 F.3d 205, 209 (5th Cir.1998). Therefore, before imposing attorneys' fees under its inherent powers, the district court must make a specific finding that a party acted in bad faith.

8

In the case at hand, the court entered a judgment which stated in pertinent part: "For reasons assigned in [the] bench opinion, the court concludes that judgment should be entered in favor of the defendant and against the plaintiff and that the defendant should be awarded its costs of litigation, including reasonable <u>attorneys' fees</u>." (emphasis added). The bench opinion is absent any finding that Spring or his counsel acted in "bad faith," or that the litigation was "vexatious, wanton, or oppressive." Essentially, the bench opinion reviews the plaintiff's case-in-chief and discusses the grounds for the JMOL. Because the court failed to make the requisite factual finding, we find that the court abused its discretion when it awarded attorneys' fees to the nursing home. Thus, we vacate this portion of the judgment.

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's evidentiary rulings and judgment as a matter of law and VACATE the attorneys' fees portion of the judgment.

9