# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 30, 2012

No. 10-20675

Lyle W. Cayce
Clerk

MARIA RODRIGUEZ TRENADO, Individually and as representative of the estates of her spouse, Martin Ramon Trenado, deceased, and of her son Jose Trenado, deceased; EMANUEL TRENADO, Individually; JESSICA TRENADO, Individually,

Plaintiffs – Appellants

v.

COOPER TIRE & RUBBER COMPANY, a Delaware Corporation,

Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-cv-00249

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs–Appellants, the Trenados, brought a products liability suit against Defendant–Appellee, Cooper Tire & Rubber Company, after a tire on the Trenados' van failed catastrophically. The jury returned a verdict in favor of Cooper on all claims, and the district court entered a take-nothing judgment. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20675

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 21, 2007, Martin, Maria, Jessica, Jose, and Emanuel Trenado were involved in a tragic rollover accident that resulted in the deaths of Martin and Jose and injuries to Maria and Jessica. The family was returning to Houston after vacationing in Mexico, and Emanuel was driving the Trenados' 1991 Chevrolet van on a divided highway. Emanuel testified that he heard a noise and then lost control of the van. Expert testimony indicates that the van was traveling between 74 and 85 miles per hour when a tire on the Trenados' van failed and the accident sequence began. The tire at issue was a Sears Guardsman Trailhandler AP size P235/75R15 XL tire that the Trenados had purchased in 2003. Cooper Tire & Rubber Company had both designed and manufactured the tire.

Emanuel, Jessica, and Maria Trenado, individually and on behalf of the estates of Martin and Jose Trenado, filed this diversity products liability suit, bringing claims under Texas law. The Trenados asserted that Cooper was strictly liable for design and manufacturing defects in the tire that caused it to fail, which, in turn, caused the fatal crash and related damages. The Trenados also contended that Cooper was negligent in connection with the design and manufacture of the subject tire. An eight-person jury found that there was no causal design defect, no causal manufacturing defect, and no negligence that caused the deaths and injuries at issue. Consequently, the district court rendered a take-nothing judgment and dismissed the Trenados' claims with prejudice.

The Trenados timely appealed. Question 1 of the verdict form asked whether there was a design defect that caused the deaths and injuries alleged. The question included an instruction regarding a rebuttable presumption of no liability under Texas Civil Practice and Remedies Code § 82.008 that applies if a defendant establishes that (1) the product at issue complied with a mandatory

No. 10-20675

federal safety standard that governed the risk of harm alleged and (2) the standard was applicable to the product at the time it was manufactured. The safety standard at issue in this case is Federal Motor Vehicle Safety Standard ("FMVSS") 109, 49 C.F.R. § 571.109. The Trenados contend that inclusion of this instruction in Question 1 of the verdict form constitutes reversible error. In addition, prior to trial, the Trenados had sought to prevent the admission of evidence related to compliance with FMVSS 109 through a motion in limine. They contend that the denial of their motion also constitutes a ground for reversing the judgment of the district court.

## II. DISCUSSION

*A. The Jury Instruction on the Presumption under § 82.008*

 *1. Standard of Review*

 "We review properly preserved claims of jury instruction error for abuse of discretion." *Wright v. Ford Motor Co.*, 508 F.3d 263, 268 (5th Cir. 2007). Reversal is proper when "[t]he party challenging the instructions . . . demonstrate[s] that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 293 (5th Cir. 2007) (citation and internal quotation marks omitted). However, "even where a jury instruction was erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Id.* (citation and internal quotation marks omitted).

 "Where a claimed ground of instructional error raised on appeal was not properly preserved below we may reverse *only* for plain error, which requires not only error, but also that the error was clear or obvious [and] that substantial rights were affected . . . ." *Wright*, 508 F.3d at 272 (citations and internal quotation marks omitted). We may, at our discretion, correct an error when

3

No. 10-20675

failure to do so "would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

*2. The Jury Instruction*

The Trenados contend that the district court erred by instructing the jury about a rebuttable presumption of no liability under Texas Civil Practice and Remedies Code § 82.008. Section 82.008 provides:

> (a) In a products liability action brought against a product manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to a claimant caused by some aspect of the formulation, labeling, or design of a product if the product manufacturer or seller establishes that the product's formula, labeling, or design complied with mandatory safety standards or regulations adopted and promulgated by the federal government, or an agency of the federal government, that were applicable to the product at the time of manufacture and that governed the product risk that allegedly caused harm.
>
> (b) The claimant may rebut the presumption in Subsection (a) by establishing that:
>
>> (1) the mandatory federal safety standards or regulations applicable to the product were inadequate to protect the public from unreasonable risks of injury or damage; or
>>
>> (2) the manufacturer, before or after marketing the product, withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue in the action.

The jury instruction at issue appeared as part of Question 1, which asked whether "there was a design defect . . . that was a producing cause of the injuries in question." The language regarding the presumption tracked § 82.008 almost verbatim and relayed to the jury that "[t]here is a rebuttable presumption that

No. 10-20675

a product manufacturer . . . is not liable for any injury . . . if the product manufacturer . . . establishes that the product's  . . . design complied with mandatory safety standards . . . ."[1] Thus, the jury was allowed to determine both whether the presumption applied and whether it had been rebutted.

### 3. FMVSS 109 and the Relevant Product Risk

The Trenados contend that Cooper was not entitled to the instruction on the presumption under § 82.008 because Cooper failed to establish that the subject tire complied with a safety standard governing the relevant product risk.[2]  As set out above, to be entitled to the presumption under § 82.008, a defendant must show compliance "with mandatory [federal] safety standards . . . that governed the product risk that allegedly caused the harm." TEX. CIV. PRAC. & REM. CODE ANN. § 82.008(a).  Cooper's entitlement to the instruction on § 82.008 was predicated solely on its compliance with FMVSS 109, which "specifies tire dimensions and laboratory test requirements for bead unseating resistance, strength, endurance, and high speed performance; defines tire load ratings; and specifies labeling requirements for passenger car tires."  49 C.F.R. § 571.109 at S1.  FMVSS 109 requires, *inter alia*, that a tire "exhibit no visual evidence of tread, sidewall, ply, cord, innerliner, or bead separation, chunking, broken cords, cracking, or open splices" after being subjected to a variety of stressful conditions.  *Id.* at S4.2.1(e).  Other required testing assesses a tire's ability to withstand impact forces applied by a cylindrical steel plunger and its ability to run at high speeds without failing.  *Id.* at S4.2.2.4, S4.2.2.6, S5.3, S5.5.

---

[1] The parties do not dispute that the jury instruction at issue was a correct statement of law.

[2] The Trenados also suggest that the legislative history underlying FMVSS 109 suggests that Congress did not intend compliance with Federal Motor Vehicle Safety Standards to function as a defense or otherwise affect the rights of the parties.  However, as set out above, § 82.008 of the Texas Civil Practice and Remedies Code expressly creates a presumption of no liability based on compliance with mandatory federal safety standards.

No. 10-20675

The Trenados assert that FMVSS 109 "has literally nothing to do with detecting or preventing the type of defect or risk of defect at issue in this case," which they define as the subject tire's "undue propensity for late-life catastrophic tread separation failure."[3]  They argue that relevant testing would assess long-term durability, including "the ability of the tire's internal components to maintain their integrity over long-term exposure to heat and oxygen and other environmental factors."  FMVSS 109, by contrast, requires laboratory testing that takes only a few hours to conduct.

Cooper defines the relevant risk more broadly than the Trenados do, contending that tire failure due to a lack of durability is the relevant product risk.  According to Cooper, FMVSS 109 directly governs this risk.  As Cooper notes, the magistrate judge in this case conducted an extensive analysis of the applicability of FMVSS 109 and took similar view of the relevant risk.  In her January 26, 2010 Memorandum and Recommendations, the magistrate judge discussed the product risk as the "risk of [tire] failure" and stated that "FMVSS 109 clearly presents minimum standards which Defendant's tires must meet before those tires may be permitted to fail without legal repercussion."  Cooper further highlights that the tests required by FMVSS 109 pertain to tires' strength and durability—characteristics the Trenados contended were lacking in the tire that failed.  *See* 49 C.F.R. § 571.109 at S4.2.2.4 (setting requirements for "[t]ire strength"), S4.2.2.5 (setting requirements for "[t]ire endurance"), S4.2.2.6 (setting requirements for "[h]igh speed performance").

This court addressed a similar dispute in *Wright v. Ford Motor Co.*, 508 F.3d 263 (5th Cir. 2007).  The Wrights' son had been backed over and killed by a Ford Expedition, and the Wrights sought to recover damages from Ford, alleging that the Expedition at issue "had a large and unreasonably dangerous

---

[3] This ground was not raised in an objection before the district court and is thus reviewed only for plain error.

blind spot . . . [and] that Ford should have included [a] reverse sensing system as mandatory standard equipment on all Expedition models." *Id.* at 267–68. The district court had instructed the jury that the presumption created by § 82.008(a) applied but could be rebutted in accordance with § 82.008(b). *Id.* at 269. The Wrights contended this constituted reversible error because the standard at issue, FMVSS 111, "d[id] not govern the rear sensing system with which they argue[d] the Expedition should have been equipped." *Id.*

In addressing the Wrights' challenge, this court stressed that the applicability of the presumption in § 82.008(a) turns on the alleged risk, not on the alleged defect. *See id.* at 270. FMVSS 111 was entitled "Rearview mirrors" and set out "requirements for the performance and location of rearview mirrors." 49 C.F.R. § 571.111 at S1. Nowhere did it address the alleged defect (i.e., the absence of rear sensors). *See id.* However, the standard expressly stated that its purpose was "to reduce the number of deaths and injuries that occur when the driver of a motor vehicle does not have a clear and reasonably unobstructed view to the rear." *Id.* at S2. Because the harm in *Wright* was a death attributed to the Expedition's obstructed rear visibility, this court held that FMVSS 111 addressed the product risk of harm asserted and that the district court properly rejected the Wrights' objection to the jury charge. *See Wright*, 508 F.3d at 272.

In the instant case, we conclude that tire failure was the relevant product risk and that FMVSS 109 governed this risk. Unlike the safety standard in *Wright*, FMVSS 109 does not expressly state its purpose or the risk it seeks to address. *Compare* 49 C.F.R. § 571.109 *with* § 571.111. However, FMVSS 109 does require a number of tests aimed at assuring that a tire is sufficiently durable to avoid failure under numerous stressful conditions. *See* 49 C.F.R. § 571.109. At trial, the Trenados' witnesses and attorneys often framed the alleged defects of the subject tire in terms of what they alleged was inadequate durability. These descriptions of the relevant risk in terms of characteristics

FMVSS 109 directly addresses suggest that FMVSS 109 governs the risk of harm in this case. *See Wright*, 508 F.3d at 270 (considering statements at trial made by the plaintiffs' experts and attorneys when determining whether the standard at issue governed the risk of harm alleged). Moreover, the broad range of tests required by FMVSS 109 and the variety of stressful conditions imposed on tires suggest that the regulation governs tire failure in general, as opposed to a particular mode of failure or type of defect. Consequently, the Trenados' challenge regarding the applicability of FMVSS 109 to the risk at issue does not demonstrate that it was plain error to instruct the jury on the presumption under § 82.008.

*4. Compliance with FMVSS 109*

The Trenados argue that Cooper failed to offer any evidence of compliance with FMVSS 109 and thus was not entitled to a jury instruction regarding the presumption in § 82.008.[4] A jury instruction regarding the presumption in § 82.008 is proper if there is some evidence that would permit a rational jury to find that the presumption applies. *See FDIC v. Blanton*, 918 F.2d 524, 529 (5th Cir. 1990) ("A party is entitled to an instruction only on claims supported by some evidence." (citation omitted)); *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir. 1989). The Trenados stress that Cooper did not introduce FMVSS 109 into evidence and contend that the requirements to comply with FMVSS 109 were never fully explained. The Trenados concede that Cooper's expert witness Lyle Campbell described tests that resembled those FMVSS 109 requires, but they assert that there was no evidence that the subject tire or its design prototype met mandatory federal safety requirements. Furthermore, although Campbell did testify at some length about Cooper's high-

---

[4] Counsel for the Trenados properly preserved this claim of error by objecting at trial. Thus, an abuse of discretion standard applies.

No. 10-20675

speed testing, the Trenados contend that he provided little, if any, information about the other tests FMVSS 109 requires.

Cooper, on the other hand, asserts that Campbell's testimony did provide a basis for the jury to conclude that the subject tire complied with FMVSS 109. Campbell testified that the subject tire was marked with a Department of Transportation ("DOT") number that reflected Cooper's certification that the tire met all applicable DOT requirements. Campbell further testified that "DOT – Department of Transportation – No. 109 was the government regulation test" related to high-speed performance and indicated that a tire must meet the regulation's requirements for the tire to be sold in the United States. Campbell also stated that Cooper conducts high-speed, endurance, strength, and bead-unseating tests on its tires during the design process, on tires sampled from production batches before its tires can be shipped, and again as part of its quality assurance program (through a process called "surveillance testing") on tires sampled from its warehouse. Campbell then testified in detail about the high-speed surveillance testing of tires made from the same specification as the subject tire in the 38th week of 2003 (two weeks before the subject tire was made) and the 43rd week of 2003 (three weeks after the subject tire was made). With regard to the tire made in the 38th week of 2003, Campbell testified that it was subject to high-speed, strength, and bead-unseating testing, and he agreed that the "tire met and exceeded all of the requirements, including Cooper Tire's surveillance requirement." The results of the surveillance testing were admitted into evidence as Defendant's Exhibit 51, which included the results of endurance testing as well.

Although Cooper certainly could have gone to greater lengths to set out the requirements of FMVSS 109 and to demonstrate compliance with the regulation, we conclude that Campbell's testimony was sufficient to allow a reasonable jury to find that a mandatory federal standard governed tire durability and that the

subject tire complied with that standard. Consequently, the district court did not err on this ground in instructing the jury on the rebuttable presumption under § 82.008.

*5. Testimony Regarding the Risk FMVSS 109 Addresses*[5]

The Trenados also contend that there was no testimony at trial establishing that FMVSS 109 governed the risk of harm alleged in this case. However, Campbell's testimony again provided a reasonable basis for the jury to conclude that mandatory federal safety standards governed the risk of harm alleged (i.e., tire failure). As we discussed above, the subject tire's alleged defect was often framed as a lack of durability. Campbell testified about strength, endurance, bead-unseating, and high-speed testing, which are related directly to tires' durability. Moreover, in his detailed explanation of Cooper's high-speed testing, Campbell testified that the testing is conducted until the tire fails. This testimony shows a direct link between tire failure and the tests the DOT requires. Thus, there was a sufficient basis for a reasonable jury to conclude that the product risk in this case was tire failure and that Cooper's testing was geared toward meeting federal safety standards governing that risk. Consequently, the trial court did not commit plain error by instructing the jury regarding § 82.008 on this ground.

*6. Applicability of Safety Standards When the Subject Tire was Made*[6]

The Trenados contend that the jury instruction on the presumption at issue was improper because there was no evidence presented to the jury that FMVSS 109 applied to the subject tire at the time it was made. However, as discussed above, Campbell examined testing done on tires made from the same

---

[5] This ground was not raised in an objection before the district court and is thus reviewed only for plain error.

[6] This ground was not raised in an objection before the district court and is thus reviewed only for plain error.

specification as the subject tire both two weeks before and three weeks after the subject tire was made. Further, he expressly stated that, at the time the tire made in the 38th week of 2003 was tested, "Department of Transportation – No. 109 was the government regulation test." Thus, we conclude that it was not plain error for the district court to instruct the jury on the presumption under § 82.008 based on a lack of evidence that FMVSS 109 applied to the subject tire.

*B. The Denial of the Trenados' Motion in Limine*

"The grant or denial of a motion in limine is considered discretionary, and thus will be reversed only for an abuse of discretion and a showing of prejudice." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005) (citing *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994)).[7] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387 (5th Cir. 2009) (citation and internal quotation marks omitted). However, even when evidence was admitted erroneously, we reverse only if the error "affect[ed] a substantial right of the parties." *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

The Trenados argue that compliance with FMVSS 109 is irrelevant, and thus the district court abused its discretion by denying their motion in limine seeking to exclude all evidence of such compliance. However, as set out above, FMVSS 109 governed the product risk in this case and was thus relevant to the

---

[7] Cooper argues that we should review the denial of the Trenados' motion in limine for plain error because Trenados did not object to the magistrate judge's Memorandum and Recommendations regarding the Trenados' motion for summary judgment, which was based on the same grounds as those raised in the motion in limine. However, the magistrate judge stated that her ruling was "not intended to infringe upon the right of the trial court to rule in any manner it deems proper on Plaintiffs' pending motion in limine." Thus, we review the district court's denial of the Trenados' motion in limine for abuse of discretion. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (predicating the application of plain error review on "notice that such consequences will result from a failure to object").

No. 10-20675

dispute.  Consequently, we conclude that the district court did not abuse its discretion in denying the Trenados' motion in limine.

### III. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.  Costs shall be borne by Plaintiffs–Appellants.